[Cite as *State v. Sexton*, 2026-Ohio-2636.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30665 |
| Appellee | : | |
| | : | Trial Court Case No. 24CRB01682 |
| v. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| DANNY R. SEXTON | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |
| | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 10, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

MARY K. HUFFMAN, JUDGE

TUCKER, J., and EPLEY, J., concur.

**OPINION**

CHARLES M. BLUE, Attorney for Appellant
KENT J. DEPOORTER, Attorney for Appellee

HUFFMAN, J.

**{¶ 1}** Defendant-Appellant Danny Sexton appeals from his convictions in the Kettering Municipal Court following a jury trial on charges of obstructing official business and failure to comply with the signal or order of a police officer. First, he contends that the trial court erred in overruling his motion to suppress and motion to dismiss the charges, arguing that his arrest pursuant to an extraterritorial stop was unconstitutional and that the police officer lacked probable cause. However, during a police officer's lawful traffic stop of another motorist outside of the officer's jurisdiction, not only did Sexton obstruct official business by interfering with the officer's stop, but when the officer pursued Sexton for that obstruction, the officer saw Sexton commit traffic violations. Second, Sexton argues that the evidence was insufficient to prove his guilt beyond a reasonable doubt with respect to the two charges. The record, however, demonstrates that Sexton not only obstructed the police officer's official business of conducting an unrelated traffic stop, but he also failed to comply with the officer's direction to pull over after the officer observed Sexton's traffic violations. Finally, in relation to the failure to comply charge, Sexton contends that the trial court erred in giving an additional jury instruction regarding the police officer's authority to give an order. Because the police officer had conducted an extraterritorial stop, the jury had sought clarification regarding jurisdictional issues,. The trial court clarified that, under the facts of this case, the officer had legal authority to give a lawful order or direction in the City of Moraine, which was

outside of his jurisdiction, Miami Township. Since this was an accurate statement of law, the trial court did not mislead the jury in giving its clarifying instruction.

{¶ 2} For the reasons outlined below, we affirm the judgment of the trial court.

## I. Background Facts and Procedural History

{¶ 3} On October 30, 2024, Miami Township Police Officer Kurtis Green was on patrol near Springboro Pike in Miami Township. While within the territorial limits of Miami Township, Officer Green observed a speeding vehicle and initiated a routine traffic stop of a female driver. Though Green's pursuit of the driver started in Miami Township, he eventually pulled her over in the parking lot of a commercial retail business complex located in the City of Moraine close to the township border.

{¶ 4} While Green was talking with the female driver at her car window, Sexton pulled up to the site of the stop and said, "Thought you might like to know you're not in Miami Township." Green replied, "Okay, you can go ahead and get away from my traffic stop," and Sexton responded belligerently by yelling and cursing at Green, insisting that Green was not authorized to be there.

{¶ 5} Green ordered Sexton to leave the area of his traffic stop. Instead of leaving, Sexton pulled away, circled the parking lot, and returned to Green's location. Sexton stopped his vehicle close to the door of the cruiser and began to yell, curse, and interfere with the stop again. Due to Sexton's actions, Green contacted dispatch and requested the assistance of a Moraine police officer, but no officers were available. Green told Sexton to leave a second time, and Sexton later exited the parking lot, turning north toward his home in Moraine. Once Sexton left the parking lot, Green terminated the traffic stop, released the other driver without issuing a citation, and pursued Sexton instead.

{¶ 6} In pursuit of Sexton, Green exited the parking lot and turned north into Moraine to catch up to him. Green's pursuit of Sexton occurred entirely within the geographical boundary of the City of Moraine. When Green activated his lights to signal Sexton to stop, Sexton gestured with a middle finger and ignored him. Sexton did not stop until after he pulled into his driveway, located on Pinnacle Park Drive in Moraine. Other Miami Township officers immediately arrived to assist Green. Outside of Sexton's house, Green and the other officers exited their cruisers and ordered Sexton to come from his driveway to the street where the officers were located. Sexton refused, stating that he would wait for a Moraine police officer to arrive before complying with their orders.

{¶ 7} Shortly thereafter, a Moraine officer arrived on the scene, and Sexton complied with the Moraine officer's requests. Sergeant Albrinck of the Moraine Police Department then arrived at the scene, and he and Green discussed jurisdictional issues associated with the City of Moraine falling within the territorial jurisdiction of Kettering Municipal Court and Miami Township falling within the jurisdiction of Miamisburg Municipal Court. Based on Green's report to him, Albrinck returned to the Moraine police department to prepare criminal complaints charging Sexton with one count of obstructing official business in violation of R.C. 2921.31(A) and one count of failure to comply with the signal or order of a police officer in violation of R.C. 2921.331(A). Albrinck returned to Sexton's house to have Green execute the probable cause affidavits, and Green then transported Sexton to the Montgomery County jail.

{¶ 8} On January 10, 2025, Sexton filed motions to suppress and dismiss. Sexton asserted that Green acted outside of his jurisdiction when he pursued and arrested him, because his sole interaction with Sexton occurred in Moraine, rather than in Green's jurisdiction in Miami Township. He argued that the exceptions to jurisdictional limits set forth

4

under R.C. 2935.03 did not apply, because Green's pursuit of him did not begin in Green's jurisdiction and he had not committed any of the statutorily permitted offenses for expansion of an officer's jurisdiction. Sexton also argued that Green lacked probable cause to pursue him for obstructing official business, as his actions were mere annoyances and did not rise to the level of obstruction. Sexton claimed that he complied with Green's instructions by leaving the area, that he never left his vehicle, that he made no comment to the other driver whom Green had pulled over, that he was no threat to Green, and that he did not prevent Green from conducting his traffic stop. Sexton further claimed that there was no emergent or dangerous situation, that Green lacked probable cause to pursue and arrest him outside of his territory, and that no exception permitting Green to conduct a warrantless arrest of him outside of Green's jurisdiction of Miami Township applied. In other words, according to Sexton, Green unnecessarily terminated his traffic stop to pursue Sexton without reason and then, without probable cause to pursue him, exceeded his territorial jurisdiction in pursuing and arresting him.

{¶ 9} The suppression matter proceeded to hearing, and the following evidence was admitted. Green testified that, during his traffic stop of the female driver, Sexton approached him and yelled profanities out his vehicle window regarding jurisdictional concerns. Green observed that Sexton was very agitated, and he believed that Sexton's actions were unpredictable. He was uncertain if Sexton was armed or would have used his vehicle as a weapon. He stated that Sexton's behavior impeded his ability to do his job in investigating the traffic stop because his attention from the stop was diverted away from the other driver to Sexton. Green contacted dispatch for additional assistance from the City of Moraine in accordance with a mutual aid agreement, but the Moraine police never arrived, because the department's officers were busy on another call. Believing that Sexton should be arrested

5

for obstructing official business, Green pursued Sexton in his cruiser and observed him making marked lane, stop sign, and turn signal violations, substantiating his concerns that Sexton was driving while impaired. Green did not attempt to stop Sexton until after additional Miami Township officers accompanied him en route. Once Green attempted to stop Sexton by turning on his lights, Sexton signaled the middle finger, refusing to pull over. Green and the other officers followed Sexton to his house. Upon arriving, Sexton refused to exit his vehicle into police custody until Moraine officers arrived on the scene. Sergeant Albrinck of the Moraine Police Department prepared the documents to charge Sexton with obstruction of official business and failure to comply, and Green placed Sexton into custody. Green stated that Sexton prolonged and impeded his ability to do his job during the traffic stop and that he was unable to issue a speeding citation and finish the stop of the other driver. Green instead decided to pursue Sexton because Sexton's behavior and unpredictability created concerns regarding his own safety, the safety of the other driver, and the safety of the general public.

{¶ 10} The trial court disagreed with Sexton, overruling his motions to suppress and dismiss. The court found that there were reasonable suspicion and probable cause for Green to follow Sexton and conduct a traffic stop of him. The court also found that there was probable cause for Green to arrest Sexton and charge him with obstructing official business and failure to comply. The court stated that even if Green was outside of his Miami Township jurisdiction in Moraine when he pursued Sexton, there were still no grounds for suppression of the evidence, emphasizing that the seizure of a motorist by an officer acting outside of his territorial jurisdiction was not unreasonable per se under the Fourth Amendment.

{¶ 11} The matter proceeded to jury trial on September 24, 2025. During the trial, Green again testified that Sexton interrupted his traffic stop by yelling and cursing at him

regarding jurisdictional concerns. Green stated that he told Sexton to get away from his traffic stop, but Sexton ignored him, continuing to yell and curse at him. Green testified that Sexton drove away briefly, only to return a few moments later with additional yelling and cursing before eventually driving away again. Green testified that he was concerned about his and the other driver's safety and that he was unsure if Sexton was intoxicated or having a mental health breakdown. Green told the jury that, for those reasons, he decided to terminate the stop of the other driver and pursue Sexton.

{¶ 12} Sexton sought a Rule 29 acquittal at the close of the State's case, arguing both that the evidence was insufficient to support the obstructing official business charge and that there was no probable cause for the subsequent attempt to stop Sexton, which formed the basis of the failure to comply charge. The trial court overruled the motion. Defense counsel raised the issue of the officer being outside the territorial limits of his jurisdiction, and the trial court stated that the issue had already been ruled upon and was not an issue for the jury.

{¶ 13} During jury deliberations, the jury delivered the following written question to the court: "Is additional information available regarding jurisdiction issues or pertinent agreements in this case?" The trial court responded by stating, "[E]ven though Officer Green is a Miami Township police officer, he has legal authority to give a lawful order or direction in the City of Moraine, so you can assume the Court has already decided any legal issue regarding the officer's legal authority in this situation." The jury returned guilty verdicts on both counts, and Sexton timely appealed.

## II. Assignments of Error

{¶ 14} On appeal, Sexton asserts three assignments of error. The first assignment of error states:

THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION

7

TO DISMISS/MOTION TO SUPPRESS.

**{¶ 15}** In his first assignment of error, Sexton contends that the trial court erred in overruling his motions to suppress and dismiss, repeating several of the same arguments that he presented in his motions before the trial court. Sexton was arrested and charged with obstructing official business under R.C. 2921.31(A) and with failure to comply with an order or signal of a police officer under R.C. 2921.331(A). He challenges his arrest on two grounds: (1) that Officer Green lacked the authority under R.C. 2935.03 to arrest him without a warrant outside of his jurisdiction and (2) that Officer Green lacked probable cause to detain and arrest him for the offenses.

**{¶ 16}** Crim.R. 12(C) governs pretrial motions in criminal proceedings. Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue, including (1) defenses and objections based on defects in the institution of the prosecution; (2) defenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding); and (3) motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained. Crim.R. 12(C).

**{¶ 17}** Crim.R. 12(C) provides a means of challenging the legal sufficiency of the complaint or indictment by way of a motion to dismiss. *State v. Brown*, 2019-Ohio-1666, ¶ 3 (2d Dist.) "If the allegations set forth in the charging document constitute the criminal offense charged, the motion to dismiss must be overruled." *Id.*, citing *State v. Patterson*, 63 Ohio App.3d 91, 95 (2d Dist. 1989). An appellate court reviews a trial court's decision on a motion to dismiss de novo. *Id.*, citing *State v. Cassel*, 2016-Ohio-3479, ¶ 19 (2d Dist.).

8

{¶ 18} A motion to suppress, on the other hand, is the primary legal mechanism under Crim.R. 12(C) used to enforce the Fourth Amendment to the United States Constitution. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Under the Fourth Amendment, individuals are protected from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1 (1968); *State v. Pressley*, 2012-Ohio-4083, ¶ 18 (2d Dist.). The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials, securing a fundamental right to privacy. *Camara v. Mun. Court of the City and Cty. of San Francisco*, 387 U.S. 523, 528 (1967). "The exclusionary rule bars the use of evidence secured by an unconstitutional search and seizure." *State v. Leak*, 2016-Ohio-154, ¶ 34, citing *State v. Johnson,* 2014-Ohio-5021, ¶ 40, citing *Weeks v. United States,* 232 U.S. 383, 394 (1914) (announcing the exclusionary rule), and *Mapp v. Ohio,* 367 U.S. 643, 655 (1961) (extending the exclusionary rule to the states).

*Probable Cause*

{¶ 19} Probable cause is a fundamental concept in Fourth Amendment jurisprudence and serves as a threshold for law enforcement to make arrests. For a warrantless arrest, probable cause requires that the arresting officer possess sufficient information at the time of the arrest "that would cause a reasonable and prudent person to believe that a criminal offense has been or is being committed." *State v. Elmore*, 2006-Ohio-6207, ¶ 39, citing *Gerstein v. Pugh*, 420 U.S. 103, 111-112 (1975) and *Beck v. Ohio*, 379 U.S. 89, 91 (1964). In determining whether probable cause existed, an appellate court examines the "totality" of facts and circumstances surrounding the arrest. *Id.*, citing *State v. Homan*, 89 Ohio St.3d 421, 427 (2000). A lack of probable cause will render a warrantless arrest invalid.

{¶ 20} The proper remedy for a Fourth Amendment violation is a motion to suppress evidence. *State v. Lloyd*, 126 Ohio App. 3d 95, 100 (7th Dist. 1998). Ohio law makes no provision for a motion to dismiss based on a lack of probable cause. *Id*. Our standard of review for a motion to suppress presents a mixed question of law and fact. In considering a motion to suppress, the trial court assumes the role of the trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of the witnesses. *State v. Cosby*, 2008-Ohio-3862, ¶ 11 (2d Dist.), citing *State v. Clay*, 34 Ohio St.2d 250 (1973); *State v. Turner*, 2015-Ohio-4612, ¶ 10 (2d Dist.). Thus, the weight of the evidence and the credibility of the witnesses at a suppression hearing are matters for determination by the trial court. *See State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). We accept the trial court's findings of fact if they are supported by competent, credible evidence, but we apply the do novo standard of review to evaluate whether the trial court's conclusions of law regarding those factual findings are correct. *State v. Brock,* 2010-Ohio-5885, ¶ 12 (2d Dist.), quoting *State v. Burnside,* 2003-Ohio-5372, ¶ 8; *see also State v. Rhines*, 2011-Ohio-3615, ¶ 16 (2d Dist.).

*Authority to Arrest Without Warrant – Pursuit Outside Jurisdiction*

{¶ 21} R.C. 2935.03 is the primary statute governing a peace officer's authority to make a warrantless arrest. It establishes where an officer can arrest, what offenses justify a warrantless arrest, and the conditions under which officers can pursue a suspect outside of their standard jurisdiction. R.C. 2935.03(A)(1) mandates peace officers to arrest and detain any person found violating state laws, local ordinances, or township resolutions within their territorial jurisdiction until a warrant can be secured. It generally provides that a peace officer within a township may arrest a person found violating the law without a warrant so long as the officer is acting within the political subdivision in which he is employed. R.C. 2935.03(A)(1).

**{¶ 22}** Divisions of R.C. 2935.03 provide exceptions to the territorial restrictions on a peace officer's authority to conduct a warrantless arrest. For example, R.C. 2935.03(B)(1) permits an officer to make a warrantless arrest outside the officer's jurisdiction where there is reasonable ground to believe that a specified offense has been committed, including but not limited to offenses of violence, domestic violence, protection order violations, stalking, theft, or criminal child enticement. R.C. 2935.03(C) permits an authorized peace officer to stop, detain, and investigate any individual whom the officer has a reasonable ground to believe is operating a motor vehicle while impaired and holding a commercial driver's license or operating a vehicle regulated by the public utilities commission. R.C. 2935.03(D) authorizes fresh pursuits by peace officers across jurisdictional lines with certain restrictions, and R.C. 2935.03(E) permits officers to make warrantless arrests and traffic stops for certain violations on streets or highways located immediately adjacent to their physical jurisdiction.

**{¶ 23}** However, "[w]here a law enforcement officer, acting outside the officer's statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed outside the officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable per se under the Fourth Amendment." *State v. Weideman*, 2002-Ohio-1484, syllabus. As a result, "the officer's statutory violation does not require suppression of all evidence flowing from the stop." *Id*. Moreover, "when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 171 (2008); *see State v. Jones*, 2009-Ohio-316, ¶ 1 (when an officer has probable cause to initiate a stop because he personally observed a traffic violation, the officer's extraterritorial traffic stop in contravention of R.C. 2935.03 does not violate the Fourth Amendment of the United States Constitution).

11

*Obstructing Official Business*

**{¶ 24}** Sexton was charged with obstructing official business under R.C. 2921.31(A), which states:

No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

Sexton contends that Green was employed in Miami Township and thus lacked the authority under R.C. 2935.03(A) to arrest him in Moraine. He argues that none of R.C. 2935.03's exceptions to the basic territorial limits on an officer's authority to conduct a warrantless arrest are applicable to the facts of this case, as the charges against him are not qualifying offenses. He contends that the obstructing official business charge was alleged to have occurred inside the boundaries of the City of Moraine. Thus, no pursuit originated inside Green's jurisdiction, nor did the alleged offenses arise on any street or highway adjacent to Miami Township. Finally, Sexton argues that Green lacked probable cause to arrest him for obstructing official business, as his actions did not rise to the level of obstruction.

**{¶ 25}** In the case before us, it is undisputed that Green, while lawfully engaged in an extraterritorial traffic stop of another driver in the City of Moraine, conducted an extraterritorial stop when he detained and arrested Sexton in Moraine outside of his Miami Township jurisdiction. It is also undisputed, however, that Green personally observed Sexton approach in his vehicle while yelling profanities at Green while Green was in the midst of that traffic stop of the other driver. Green advised Sexton to get away from his stop, but Sexton ignored him and continued interrupting by yelling and cursing about Green's lack of jurisdiction. Sexton did not merely yell briefly at Green; he actively returned to the scene of

12

the traffic stop to continue harassing Green after Green told him to leave, and he stopped his vehicle very close to Green's cruiser. Green observed that Sexton was very agitated, believed that Sexton's actions were unpredictable, and felt uncertain about whether Sexton was armed or planned to use his vehicle as a weapon. This created a direct safety concern, forcing Green to abandon his initial investigation of the speeding motorist and release her without citation. Green testified that Sexton's behavior impeded his ability to do his job in investigating the traffic stop because his attention from the stop was diverted from the other driver to Sexton and that Sexton ignored his order to leave. Believing that Sexton should be arrested for obstructing official business, Green pursued Sexton and followed him to his house. According to Green, Sexton prolonged the traffic stop and impeded Green's ability to do his job during the stop. Green therefore decided to abort the traffic stop and pursue Sexton because Sexton's behavior and unpredictability created concerns regarding Green's own safety, the safety of the other driver, and the safety of the general public. Forcing an officer to abandon a lawful traffic stop certainly impedes the officer's performance of his lawful duties.

{¶ 26} Given the totality of the facts and circumstances, Green had probable cause to detain and arrest Sexton for obstructing official business. Sexton's conduct of interfering with Green's traffic stop and ignoring Green's order to leave the area, coupled with Green's premature termination of the stop, constituted the basis of Green's determination that Sexton obstructed official business. Green personally observed the offense, so he had probable cause to initiate the stop. Sexton's detention and eventual arrest, even though made by an officer outside of his jurisdiction, did not violate his constitutional rights, and thus the exclusionary rule does not apply to suppress the evidence. Therefore, we cannot say that

13

the trial court erred in overruling Sexton's motions to suppress and dismiss the obstructing official business charge.

{¶ 27} We acknowledge that Sexton also argued that Article I, Section 14 of the Ohio Constitution contains virtually identical language to that of the Fourth Amendment but provides greater protections than the Fourth Amendment. *State v. Craig*, 2019-Ohio-4962, ¶ 22 (7th Dist.), citing *State v. Brown*, 2015-Ohio-2438. "[U]nder the greater protections against unreasonable searches and seizures provided by the Ohio Constitution, the government's interest in permitting the officer to then make an arrest outside of that officer's jurisdiction must outweigh the individual's privacy rights, or will be found to violate the defendant's rights under the Ohio Constitution." *Id*., citing *Brown* at ¶ 21, 25. Even in consideration of this balancing test, we find that the government's interest in this case outweighed the restraints on Sexton's privacy rights. The interest in protecting the other driver and the public from Sexton's erratic behavior, particularly when Green believed that Sexton may have been intoxicated or having a mental health breakdown while driving, outweighed any possible restraint there may have been on Sexton's liberty interest.

*Failure to Comply with an Order of a Police Officer*

{¶ 28} Sexton was also charged with a violation of R.C. 2921.331(A), which prohibits an individual's failure to comply with a lawful order or direction of a police officer who is invested with authority to direct, control, or regulate traffic. In *State v. Redd*, 2004-Ohio-4689, ¶ 12 (2d Dist.), we considered the meaning of the term "lawful order" and explained that it reasonably encompasses the officer's lawful exercise of his authority over *the direction, control, or regulation of traffic*. The "lawful order" of a police officer contemplated by R.C. 2921.331(A) is one that involves the offender's act or omission in operating a motor vehicle, which by law an officer is charged with authority to direct, control, or regulate. *Id*. at

14

¶ 19. We explained that it was "only necessary that the officer be charged by law with authority to direct it and that the offender fails to comply with the officer's particular direction." *Id*; *see State v. Wilburn*, 2025-Ohio-4312, ¶ 10 (12th Dist.) ("the police officer must be engaged in traffic regulation at the time the order is given.").

{¶ 29} Sexton contends that Green did not issue a "lawful order or direction" to him as a "police officer invested with authority to direct, control, or regulate traffic." He asserts that the charge against him for failure to comply should have been dismissed because, under the facts of this case, there were no circumstances giving rise to a violation of R.C. 2921.331(A) and "the law simply [did] not apply."

{¶ 30} The factual allegations giving rise to the failure to comply charge against Sexton occurred when Green pursued Sexton for obstructing official business, observed Sexton making marked lane and turn signal traffic violations, and activated his cruiser lights to stop Sexton, and Sexton failed to stop for Green. As already explained, when an officer has probable cause to initiate a stop because he personally observed a traffic violation, the officer's extraterritorial traffic stop in contravention of R.C. 2935.03 does not violate the Fourth Amendment of the United States Constitution. Moreover, when Green pursued Sexton, Green already had probable cause to believe that Sexton had committed the crime of obstructing official business in his presence. When an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt, and the arrest is constitutionally reasonable.

{¶ 31} Considering the totality of the facts and circumstances, we conclude that Green's observations of Sexton's traffic violations gave Green probable cause to give an order and signal Sexton to pull over. Sexton refused to do so. Sexton's refusal to pull over constituted the basis of Green's conclusion that he failed to comply with an order and gave

15

Green probable cause to arrest and charge him with a violation of R.C. 2921.331(A). Additionally, Green had a duty to protect the public from any danger potentially posed by Sexton. The government's interest in protecting the public again outweighed the restraints on Sexton's privacy rights, particularly when Green believed that Sexton may have been intoxicated while driving. Sexton's detention and arrest for failure to comply, even though made by an officer outside of his jurisdiction, did not violate his constitutional rights, and thus the exclusionary rule did not apply to suppress the evidence. We cannot say that the trial court erred in overruling Sexton's motions to suppress and dismiss the failure to comply charge.

{¶ 32} We want to emphasize, as noted in *Jones*, that the General Assembly chose not to provide any remedy for a violation of R.C. 2935.03(A)(1). *Jones*, 2009-Ohio-316, at ¶ 21, 23 ("We share the concerns that appellees express about law-enforcement officers who violate the territorial requirements of R.C. 2935.03. However, as discussed above, the remedy for a violation of the statute falls within the realm of the legislative branch."). Like the Court in *Jones*, we are not in the position to rectify this by elevating a violation of R.C. 2935.03 to a Fourth Amendment violation subject to the exclusionary rule, particularly when the stop in this case was constitutionally valid. *Id*. at ¶ 21.

{¶ 33} Sexton's first assignment of error is overruled.

{¶ 34} Sexton's second assignment of error states:

APPELLANT'S CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT

EVIDENCE TO PROVE GUILT BEYOND A REASONABLE DOUBT.

In his second assignment of error, Sexton argues that his convictions for obstructing official business and for failure to comply with an order or signal of a police officer were not supported by sufficient evidence to prove his guilt beyond a reasonable doubt.

16

**{¶ 35}** A sufficiency of the evidence argument relates to a dispute concerning whether the State "presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded on other grounds by state constitutional amendment as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997); *see also State v. Sheeders*, 2019-Ohio-3120, ¶ 27 (2d Dist.) ("The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt."), citing *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). "A guilty verdict will not be disturbed on appeal unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Smith,* 2023-Ohio-4565, ¶ 69 (2d Dist.), quoting *Dennis* at 430. In other words, on review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Thompkins* at 390.

**{¶ 36}** Sexton was found guilty of obstructing official business in violation of R.C. 2921.31(A), which includes five essential elements: "'(1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege.'" *State v. Morrow*, 2023-Ohio-2891, ¶ 12 (2d Dist.), quoting *State v. Kates,* 2006-Ohio-6779, ¶ 21 (10th Dist.). "A person

17

acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 37} "An affirmative act is required in order to support a finding that an individual was guilty of obstructing official business." *State v. Harris*, 2015-Ohio-5378, ¶ 7 (9th Dist.), citing *North Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 84 (9th Dist. 1996). "In order to commit obstructing official business, an individual must commit 'an overt act done with an intent to obstruct the officers' and the act must succeed in actually hampering or impeding the officers." *State v. Davis*, 2017-Ohio-5613, ¶ 37 (2d Dist.), quoting *State v. Crawford*, 2013-Ohio-4398, ¶ 20 (2d Dist.).

{¶ 38} Regarding the obstructing official business charge, Sexton contends that there was no evidence that he actually impeded Green from conducting the traffic stop. Sexton argues that Green merely claimed that, because of perceived safety concerns after his interaction with Sexton, he felt it necessary to terminate the traffic stop and chose to terminate the stop when he could have finished it.

{¶ 39} During the trial, Green testified that he ordered Sexton to leave the area, but Sexton persisted in interrupting his traffic stop by remaining at the scene and continuing to yell and curse at him. Green stated that, after observing Sexton's agitation and erratic, unpredictable behavior, he was concerned about the safety of himself, the other driver, and the general public. He testified that he was unsure if Sexton was armed and that Sexton's behavior impeded his ability to do his job in investigating the traffic stop because his attention from the stop was diverted to Sexton. After observing Sexton's behavior, Green believed that Sexton may have been intoxicated or experiencing a mental health breakdown and thus

18

may have been operating a vehicle while impaired. Considering the circumstances, Sexton believed that he had no choice but to abandon the traffic stop and pursue Sexton, who had obstructed official business and may have been posing a risk to the public. The evidence demonstrated that Sexton's actions actually impeded Green from completing the traffic stop.

{¶ 40} Given the testimony presented at trial, we conclude that the State presented sufficient evidence of obstructing official business when Sexton, without privilege, repeatedly yelled and cursed at Green during the traffic stop of the other driver; Sexton did so with the purpose of obstructing Green from performing his lawful duty in conducting the stop because Sexton believed Green was outside of his jurisdiction; and Green's execution of his duties were, in fact, impeded when he terminated the traffic stop to pursue Sexton for Sexton's obstruction and investigate his concerns about Sexton's erratic, potentially dangerous behavior. This was enough to persuade a reasonable trier of fact that the elements of obstructing official business had been proven beyond a reasonable doubt.

{¶ 41} Sexton was also found guilty of failure to comply with an order of a police officer. Under R.C. 2921.331(A), Sexton was required to comply with a lawful order or direction of a police officer invested with authority to direct, control, or regulate traffic. Green pursued Sexton in his cruiser after observing Sexton's obstruction of official business and, as an officer, was invested with the authority to direct, control, and regulate traffic. Although Green was outside of his jurisdiction at that time, he personally observed Sexton's traffic violations while in pursuit of him, and Sexton was required to comply with his orders because Green had authority to manage traffic. The record plainly shows that Sexton did not comply with Green's orders to pull over or to come from his vehicle to the street once Green was outside of his house. This was also enough to persuade a reasonable trier of fact that the

19

elements of failure to comply with the order of a police officer had been proven beyond a reasonable doubt.

{¶ 42} Sexton's second assignment of error is overruled.

{¶ 43} Sexton's third assignment of error states:

THE TRIAL COURT ERRED BY INSTRUCTING THE JURY TO ASSUME AN ESSENTIAL ELEMENT OF THE OFFENSE OF FAILURE TO COMPLY.

Sexton complains that the trial court's instruction to the jury—that Green had authority to give a lawful order or direction—was an incorrect statement of law and that the instruction in essence was a statement to the jury that the element related to "authority" in the failure to comply offense had been proven.

{¶ 44} For the failure to comply offense, the trial court gave the following jury instructions:

Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on October 30th 2024 in the City of Moraine, Montgomery County, Ohio, the Defendant, Mr. Sexton, recklessly failed to comply with any lawful order or direction of a police officer invested with the authority to direct or control or regulate traffic.

Lawful order or direction. A lawful order or direction is one that a reasonable police officer, under the facts and circumstances in evidence, would have believed was both necessary and permissible for the officer to give. And the officer must have had the authority to direct or control or to regulate traffic.

The definition of police officer. Police officer means an officer authorized to direct or regulate traffic or make arrests for violations of traffic regulations.

**{¶ 45}** During the jury's deliberations, the jury posed the following question to the court: "Is additional information available regarding jurisdictional issues or pertinent agreements in this case?" The trial court answered the question as follows: "One . . . mutual aid is not an issue in this case. So, two, even though Officer Green is a Miami Township police officer, he has legal authority to give a lawful order or direction in the City of Moraine, so you can assume the court has already decided any legal issue regarding the officer's legal authority in this situation. Your task as jurors is to decide if the facts presented support the elements of each of the two charges there. So if there was a legal issue, presume the court's decided that. Factual, your role."

**{¶ 46}** The purpose of jury instructions is to guide the jury in deciding questions of fact based on the applicable substantive law. *State v. Rac*, 2019-Ohio-893, ¶ 13 (2d Dist.), citing *Griffis v. Klein*, 2004-Ohio-3699, ¶ 48 (2d Dist.). When a jury asks for further instruction or for clarification of a previously given instruction, "a trial court has discretion in formulating its response and its decision will only be reversed for an abuse of that discretion." *State v. Hull,* 2005-Ohio-1659, ¶ 44 (7th Dist.), citing *State v. Carter,* 72 Ohio St.3d 545, paragraph one of the syllabus.

**{¶ 47}** To determine if there was prejudicial error in giving a jury instruction, "the jury instruction as a whole must be considered." *Hull* at ¶ 45, citing *State v. Noggle,* 140 Ohio App.3d 733, 750 (3d Dist. 2000). "The trial court's response, when viewed in its entirety, must constitute a correct statement of the law, consistent with or properly supplementing the jury instructions that have previously been given." *Id*., citing *Watkins v. Cleveland Clinic*

21

*Found.*, 130 Ohio App.3d 262, 277 (8th Dist. 1998). We will only find reversible error where a jury instruction has misled the jury. *Id*., citing *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312 (1995).

{¶ 48} Sexton contends that Green lacked jurisdiction to detain him in the City of Moraine, and thus the trial court's instruction to the jury that Green had "authority" to give a lawful order or direction in the City of Moraine was an incorrect statement of law. He argues that the *jury* was required to find the element related to the officer's authority to direct, control, or regulate traffic had been proven beyond a reasonable doubt. But according to Sexton, the jury was essentially instructed by the court in such a way that it could presume that the "authority" element had been proven.

{¶ 49} We disagree with Sexton, however, because the trial court's instruction was an accurate statement of law. The territorial jurisdiction and authority of a police officer under R.C. 2935.03 was a question of law to be determined by the judge, not a question of fact for the jury. At Sexton's invitation, the trial court had already resolved this legal question during the pretrial phase when it denied Sexton's pretrial motions. The trial court merely clarified for the jury that the legal threshold for the officer's authority, even if he was outside of his jurisdiction, had been met, properly leaving the factual determination of whether Sexton failed to comply with the order to the jury. We cannot say that the trial court abused its discretion and misled the jury in giving its clarifying jury instruction.

{¶ 50} Sexton's third assignment of error is overruled.

### III. Conclusion

{¶ 51} Having overruled Sexton's three assignments of error, we affirm the judgment of the trial court.

. . . . . . . . . . . . .

22

TUCKER, J., and EPLEY, J., concur.